NORTHWEST ENVIRONMENTAL AD-VOCATES, A Non–Profit Oregon Corporation, and Nina Bell, Plaintiffs–Appellants,

v.

CITY OF PORTLAND, Defendant–Appellee.

No. 92–35044.

United States Court of Appeals, Ninth Circuit.

Jan. 24, 1996.

Before: PREGERSON, KLEINFELD, Circuit Judges, and INGRAM, District Judge.*

---

* The Honorable William Ingram, United States Senior District Judge for the Northern District of California, sitting by designation.

## ORDER

Judges Pregerson and Ingram voted to deny appellee's amended petition for rehearing. Judge Pregerson voted to reject the suggestion for rehearing en banc and Judge Ingram so recommended.

Judge Kleinfeld voted to grant the petition for rehearing and to accept the suggestion for rehearing en banc.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehearing the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35.

The amended petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

O'SCANNLAIN, Circuit Judge, joined by HALL, T.G. NELSON, and KLEINFELD, Circuit Judges, dissenting from order rejecting suggestion for rehearing en banc:

By failing to rehear this case en banc, we have significantly reshaped federal environmental law, without consent of Congress, to the curious end that any citizen will now be permitted to bring a lawsuit at government expense for the enforcement of state water quality standards that have not been translated into effluent limitations in federal permits. Such unwarranted expansion of citizen standing conflicts with the plain language of the Clean Water Act and with prior decisions of this circuit and others.

It should go without saying that the environment faces real and growing dangers that warrant protective measures and challenge us to develop innovative solutions. Nevertheless, by allowing citizens to enforce standards that Congress specifically allocated to government agencies to monitor, the court has upset the delicate balance envisioned by Congress in its promulgation of the current enforcement regime for environmental law.

The result promises to invite excessive, costly, and counterproductive citizen suits, funded by the taxpayers, for the enforcement of standards that are imprecise and astronomically costly to the municipalities affected.

The Clean Water Act allows citizens to enforce effluent limitations contained in federal permits, but the Act does not permit citizens to enforce general water quality provisions. 33 U.S.C. § 1365. There is more than a technical distinction involved; there are significant consequences at stake. Water quality standards address the level of pollutants found in a body of water, while effluent limitations focus on the level of pollutants in the effluent discharged into a body of water by a particular discharger. As Judge Kleinfeld notes in his well-articulated dissent, "[w]ater quality standards are a useful device for government enforcement authorities ... because they provide standards for effluent limitations [but water quality standards] are too uncertain and amorphous ... for use against specific polluters." *Northwest Environmental Advocates v. Portland,* 56 F.3d 979, 992 (9th Cir.1995) (Kleinfeld, J., dissenting) (*"NWEA II"*). While state water quality standards may serve as an important source of authority for a state to impose additional pollution control requirements, they should not be used as a vehicle for flooding the federal courts with citizen suits against permittees who are meeting the specific requirements (i.e. effluent limitations) outlined in their permits.

In its original opinion released more than two years ago, the same panel, writing for the court, held the exact opposite of what it now holds. There, the then-majority opined that citizens do *not* have a private right of action to enforce water quality standards contained in Portland's permit because such standards do not constitute an "effluent standard or limitation" under 33 U.S.C. § 1365(a) and (f) and ruled for the City of Portland. *Northwest Environmental Advocates v. Portland,* 11 F.3d 900 (9th Cir.1993) (*"NWEA I"*). Judge Pregerson dissented.

The citizen plaintiffs then filed a suggestion for rehearing en banc which failed to receive a majority of votes of the active judges of the full court. On April 25, 1994, the panel resumed control of the case. Instead, however, of entering the order denying the petition for rehearing and rejecting the suggestion for rehearing en banc, ·and thereby allowing the mandate to issue seven days later under FRAP 41(a), the panel held on to the case and reconsidered its holding in light of *PUD No. 1 of Jefferson County v. Washington Department of Ecology,* —— U.S. ——, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994) (*"Jefferson County"*), which the Supreme Court decided one month *after* rejection of the en banc call in *NWEA I.* Relying on *Jefferson County,* the panel developed a new majority and thereupon vacated its original opinion and substituted a new one holding that citizens indeed *do* have standing under the Clean Water Act to enforce water quality standards. *NWEA II,* 56 F.3d 979, filed June 7, 1995.

In my view, the panel erred by reversing its original position, because *Jefferson County* simply does not support such reversal and the panel's new holding conflicts not only with a prior decision of our own court, but also with the law of other circuits. The court now cites *Jefferson County* in support of the view that Congress intended to confer standing on citizens to enforce water quality standards. *NWEA II,* 56 F.3d at 987. However, as the majority eventually acknowledges, *id.* at 988, and as the dissent emphasizes, *Jefferson County* has nothing to do with citizens' standing. *Id.* at 990 (Kleinfeld, J., dissenting) (*"Jefferson County* does not involve a citizens' suit, says nothing about citizens' suits, and implies nothing about citizens' suits.").

Instead of addressing citizen standing to enforce a permit condition, *Jefferson County* concerns a local utility district's appeal of a stream flow condition imposed by the state as part of the state's certification of the district's application for a federal permit to build a hydroelectric power plant. —— U.S. at ——·——, 114 S.Ct. at 1907–08. The Supreme Court held that "States may condition certification [of projects] upon any limi-

tations necessary to ensure compliance with state water quality standards or any other 'appropriate requirement of State law,' " and that the minimum flow condition imposed by Washington was an appropriate requirement of state law. *Id.* at ——, 114 S.Ct. at 1910. This holding merely indicates that states may impose certain water quality requirements as conditions for granting the state certification that must be obtained by an applicant seeking a federal permit. *In no way* does this holding support the notion that citizens have a private right of action to challenge permit conditions that have not been translated into effluent limitations.

Section 505 of the Clean Water Act authorizes federal jurisdiction over citizen suits "(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter...." 33 U.S.C. § 1365(a)(1). In defining "effluent standard or limitation," the section refers to various discharge-related limitations that may be imposed by other sections of the Act or by a federal permit. 33 U.S.C. § 1365(f); *see* 33 U.S.C. § 1365(f)(6) ("effluent standard or limitation" means "a permit or condition thereof"); *Jefferson County,* —— U.S. at ——, ——·——, 114 S.Ct. at 1915, 1916–17 (Thomas, J., dissenting) (describing discharge-related limitations in the Act).

Since the citizen-plaintiffs in this litigation allege violations, not of effluent limitations, but rather of a state water quality provision contained in Portland's permit, the citizens fail to meet the Clean Water Act's requirements for citizen standing. By holding otherwise, *NWEA II* conflicts with our decision in *Oregon Natural Resources Council v. U.S. Forest Service,* 834 F.2d 842 (9th Cir.1987) (*"ONRC"*), in which we stated that citizens may file suit to enforce permit limitations derived from water quality standards, but not water quality standards themselves. *Id.* at 850 ("[E]ffluent limitations may be derived from state water quality standards and may be enforced when included in a discharger's permit. We agree with defendants that it is not the water quality standards themselves that are enforceable....").

Granted, *ONRC* involved citizens attempting to enforce state water quality standards under 33 U.S.C. § 1311(b)(1)(C), as opposed to state water quality standards contained in

a permit. However, the court's conclusion that the Clean Water Act forbids citizens from suing to enforce water quality standards under section 1311(b)(1)(C) may logically be extended to suits by citizens to enforce water quality standards in permits. *See NWEA I,* 11 F.3d at 907 (citing authorities indicating that "whenever courts have been faced with the question, the answer has been that citizen suits cannot be used to enforce water quality standards").

As the same panel declared in *NWEA I,* "[The plaintiffs] have not been able to find a single case in which a court held that citizen suits could be used to enforce water quality standards, whether the water quality standards were incorporated in a NPDES [National Pollution Discharge Elimination System] permit or not." *Id.* at 907–08; *see also id.* at 909–11 (outlining legislative history supporting conclusion that citizens lack standing to enforce water quality standards that have not been translated into effluent limitations).

No other circuit has recognized a right of citizens to sue for the enforcement of state water quality standards contained in permits. In fact, other circuits have explicitly and implicitly ruled out such suits. *See Save Our Community v. United States Environmental Protection Agency,* 971 F.2d 1155, 1162 (5th Cir.1992) ("Without the violation of either (1) an effluent standard or limitation under the CWA, or (2) an order issued with respect to these standards and limitations, the district court lacks jurisdiction to act [in a citizen suit]."); *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 979 (2d Cir. 1984) (" '[a]uthority granted to citizens to bring enforcement actions under this section is limited to effluent standards or limitations established administratively under the Act' " (quoting S.Rep. No. 414, 92d Cong., 2d Sess. 80 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3747)).

Furthermore, the holding in *NWEA II* directly conflicts with the Second Circuit's decision in *Atlantic States Legal Foundation v. Eastman Kodak,* 12 F.3d 353 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 62, 130 L.Ed.2d 19 (1994). In *Atlantic States,* the Second Circuit held that "state regulations, including the provisions of SPDES [State Pollutant Discharge Elimina-

tion System] permits, which mandate 'a greater scope of coverage than that required' by the federal CWA and its implementing regulations are not enforceable through a citizen suit under 33 U.S.C. § 1365." *Id.* at 359 (citation omitted). In addition, the court noted:

> States may enact stricter standards for wastewater effluents than mandated by the CWA and federal EPA regulations. 33 U.S.C. § 1342(b). These states' standards may be enforced under the CWA by the states or the EPA, 33 U.S.C. § 1342(h), but private citizens have no standing to do so.

*Id.* at 358.

In short, *NWEA II* contradicts the plain language of the Clean Water Act, conflicts with a prior decision of this circuit, and creates a needless intercircuit conflict with all courts of appeals that have addressed the issue. The decision establishes a citizens' cause of action that Congress never intended and that no other circuit has felt compelled to recognize.

Failure to rehear this case en banc is a most unfortunate and unsettling misstep in the orderly development of federal environmental law. I respectfully dissent.