The **PINEY RUN PRESERVATION ASSOCIATION, Plaintiff,**

v.

**COUNTY COMMISSIONERS OF CARROLL COUNTY, MARYLAND, Defendant.**

**No. Civ.A. Y–98–3124.**

United States District Court, D. Maryland.

May 20, 1999.

G. Macy Nelson, Law Office, Towson, MD, for plaintiff.

James R. Chason, Whiteford, Taylor and Preston, Baltimore, MD, Linda S. Woolf, Goodell, DeVries, Leech and Gray, Baltimore, MD, David K. Gildea, Whiteford, Taylor & Oreston, Towson, MD, for defendant.

### MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The Piney Run Preservation Association ("Association") filed this suit against the County Commissioners of Carroll County, Maryland ("County"), alleging violations of the Clean Water Act ("Act"), 33 U.S.C. § 1251 et seq. Plaintiff seeks partial summary judgment on the issue of liability, and defendant has filed a motion for summary judgment.

## I.

The Association is a non-profit association whose activities include the protection of the Piney Run Stream in Baltimore County, Maryland. Members of the Association reside in Baltimore County in the vicinity of the Piney Run Stream. Defendant operates a sewage treatment plant ("Plant") in Hampstead, Carroll County, Maryland, located near the border of Carroll County and Baltimore County. The Plant discharges treated sewage into the Piney Run, a Class IIIP stream. A Class III stream is a stream which supports the growth and propagation of trout. The designation "P" identifies the stream as a source of public drinking water.

The Maryland Department of the Environment ("MDE") issued a National Pollutant Discharge Elimination System ("NPDES") permit to defendant. *See* NPDES Permit Number MD0022446 (also referred to as 88–DP–0594), Ex. B to Plaintiff's Motion for Partial Summary Judgment. The NPDES permit allows defendant to discharge certain amounts of listed pollutants into the Piney Run. Heat is not one of the pollutants listed on the permit.

NPDES Permit Number 88–DP–0594 was scheduled to expire on February 28, 1995. Because MDE has not yet issued a new permit, that permit remains effective until the new permit is issued. In 1991, defendant sought to have the amount of permitted effluent increased from 500,000 gallons per day ("gpd") to 900,000 gpd. Before allowing such an increase, MDE must make a determination that the proposed discharge will comply with all applicable requirements, including those of the Act. *See* COMAR § 26.08.04.02. MDE made such a determination when it approved the increase in 1993.

Several Baltimore County landowners whose land is bisected by the Piney Run (and at least one of whom is a member of the Association) requested an administrative hearing, contesting the MDE's determination to issue the modified permit. They asserted that the Plant's current level of discharge (500,000 gpd of effluent) violated the maximum temperature criterion for a IIIP stream, and that an increase in the flow of effluent would continue the "thermal pollution" of the stream. After a hearing, the Administrative Law Judge (ALJ) rendered a Proposed Decision and Order on January 4, 1996 to uphold the MDE's decision to grant the modified permit. The landowners filed exceptions to the proposed decision. On November 20, 1996, the MDE's Final Decision Maker (FDM) affirmed the MDE's determination to allow the County to increase the flow of effluent from the Plant. The landowners sought review of the MDE's final decision in the Circuit Court for Baltimore County. On August 22, 1997, the Circuit Court affirmed the MDE's decision.

The landowners then appealed to the Maryland Court of Special Appeals. On August 17, 1998, the Court of Special Appeals reversed the Circuit Court's decision and remanded the case to MDE for further factual findings. Specifically, the court instructed MDE to determine: (1) with respect to the Plant and its discharge of effluent, where to measure ambient temperature of the Piney Run; (2) what the ambient temperature measurement is in this case; (3) whether, at the current level of discharge, the temperature outside the mixing zone exceeds 20˜Celsius or the ambient temperature of the surface waters, whichever is greater; and (4) whether, with the proposed increase in effluent volume, the temperature outside the mixing zone will exceed 20˜Celsius or the ambient temperature of the surface waters, whichever is greater. On February 17, 1999, MDE held a hearing regarding the proposed changes, but MDE has not made a determination regarding the proposed changes to the NPDES permit.

On July 8, 1998, plaintiff gave notice of the defendant's alleged violations of the Act to the defendant, MDE, and the United States Environmental Protection Agency ("EPA") and on September 16, 1998, filed this suit alleging that the defendant

has violated the terms of its MPDES permit by discharging heat into the Piney Run.

## II.

Plaintiff filed this suit under 33 U.S.C. § 1365, the citizen suit provision of the Act. This section provides that when state and federal governments have failed to enforce an NPDES permit, citizens may bring a civil suit against "any person ... who is alleged to be in violation of ... an effluent standard or limitation under this Act." Plaintiff gave the required 60 days' notice to the appropriate parties before filing this suit. *See* 33 U.S.C. § 1365(b)(1)(A). Defendant has presented no evidence that EPA or MDE has addressed the alleged violations.

Plaintiff alleges that defendant has violated its NPDES permit by discharging "heat" into the Piney Run. The Act makes unlawful "the discharge of any pollutant by any person," except in compliance with numerous provisions of the Act, including NPDES permits. *See id.* § 1311(a). A discharge is "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12)(A). The term "pollutant" is defined as, among other things, "heat." *Id.* § 1362(6).

As a condition of defendant's NPDES permit, defendant must submit monthly reports to MDE. Among the reported items produced during discovery are the temperatures of the plant influent, plant effluent, stream above the outfall, and stream sixty feet below the outfall. *See* Hampstead Waste Water Treatment Plant Temperature in Celsius, Ex. G to Plaintiff's Motion for Partial Summary Judgment. Plaintiff has summarized these reports and indicated the days on which the plant effluent temperature exceeded the upstream temperature of Piney Run. *See* Transcription of Temperature Data, Ex. H to Plaintiff's Motion for Partial Summary Judgment. According to these reports, the temperature of the plant effluent has exceeded the upstream temperature on 371 of 397 days. *See id.*

Defendant argues that this Court lacks jurisdiction over a citizen suit regarding a pollutant that is not listed on the alleged polluter's NPDES permit. *See Atlantic States Legal Found. v. Eastman Kodak Co.,* 12 F.3d 353 (2d Cir.1993). In *Atlantic States,* the Second Circuit held that "[o]nce within the NPDES or SPDES scheme, therefore, polluters may discharge pollutants not specifically listed in their permits so long as they comply with the appropriate reporting requirements and abide by any new limitations when imposed on such pollutants." *Id.* at 357. However, the Ninth Circuit reached a different conclusion in *Northwest Environmental Advocates v. City of Portland,* 56 F.3d 979 (9th Cir.1995) ("*NWEA* "), holding that the Act allowed a citizen suit to enforce water quality standards that had not been translated into numerical effluent limitations on a permit. *Id.* at 985–90.

A plain reading of the Act indicates that citizens may bring this type of suit. The citizen suit section provides that any citizen may sue "any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). The term "effluent standard or limitation under this chapter" means, among other things, "an unlawful act under subsection (a) of section 1311 of this title." *Id.* § 1365(f). The referenced section provides: "Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." *Id.* § 1311(a).

Defendant, in a permitted surreply, has filed an affidavit by defendant's counsel Linda Woolf pursuant to Federal Rule of Civil Procedure 56(f), stating the reasons that defendant needs to conduct further discovery. Pursuant to this Court's scheduling order of December 10, 1998, discovery is to be completed by August 19, 1999. It is therefore entirely reasonable that de-

fendant had not completed its discovery before plaintiff's motion for partial summary judgment was filed. However, the discovery sought by defendant is irrelevant to the pending motions.

First, Woolf states that many of plaintiff's answers to interrogatories were incomplete, and that these answers were received after the County was required to file its opposition to plaintiff's motion. Specifically, plaintiff failed to respond to interrogatories regarding NPDES permits which include a temperature criterion (Interrog.No. 5), how to measure the ambient temperature of the Piney Run (Interrog.No. 7), and the membership of the Association (Interrogatory No. 21). The first and third interrogatories are irrelevant. Even if no NPDES permit in the country contained an explicit temperature criterion, defendant could still be liable for discharging heat into the Piney Run. It has already been established that at least one member of the Association has standing to bring this suit; therefore, the Association as a whole has standing. The measurement of ambient temperature is relevant to the pending motions; however, plaintiff has answered that interrogatory. Plaintiff stated that "the best indicator of the 'ambient temperature' is the upstream temperature of the Piney Run." Pl.'s Ans. to Interrog. No. 7. Defendant has not come forward with any evidence to the contrary, nor has defendant explained how further discovery would lead to any evidence to the contrary.

Second, Woolf avers that defendant wishes to take the deposition of C. Victoria Woodward, an Association member whose affidavit was filed with plaintiff's motion for partial summary judgment. By taking Woodward's deposition, defendant would probe the factual basis behind Woodward's affidavit. Absent evidence from defendant that Woodward's affidavit is not credible, such a deposition is unnecessary. Courts have often relied upon affidavits to establish standing in citizen suits. *See, e.g., Sierra Club v. Simkins Indus., Inc.,* 847 F.2d 1109, 1112 (4th Cir.1988); *Chesa-*

*peake Bay Found. v. Bethlehem Steel Corp.,* 608 F.Supp. 440, 445 (D.Md.1985). *See also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 556–57 (5th Cir.1996); *Save Our Community v. United States E.P.A.,* 971 F.2d 1155, 1160–61 (5th Cir.1992). Moreover, Woodward's standing as one whose interests have been affected by the Plant has been established by her participation as a plaintiff in the state law suit. There is no indication that defendant seeks this deposition for any reason other than delaying this Court's decision.

Third, defendant received plaintiff's response to its request for production of documents on April 17, 1999, after defendant's opposition had been filed. Woolf notes that defendant has not yet had an opportunity to review those documents. It is not clear what relevant information defendant could ascertain from those documents. The temperature data plaintiff has proffered come from defendant's own records; therefore, defendant has all of the documentation needed to decide these motions.

Fourth, Woolf states that the County has not yet taken the deposition of either of plaintiff's experts, because defendant wanted to obtain the plaintiff's responses to written discovery and other factual discovery prior to taking their depositions. In particular, defendant intends to ask plaintiff's experts about the conflict between their opinions and the regulations propounded by MDE. This information is irrelevant to this Court's rulings on the pending motions, because plaintiff has already established that defendant violated the MDE regulations. This citizen suit is not the appropriate forum for seeking a change in the applicable MDE regulations.

For the foregoing reasons, summary judgment is granted for plaintiff on defendant's liability for 183 violations of the Clean Water Act. A separate order effecting this ruling is entered herewith.

## ORDER

For the reasons stated in the memorandum filed herewith, it is, this 20th day of May, 1999

ORDERED that

1.  Summary judgment is granted in favor of plaintiff on the issue of liability for 183 violations of the Clean Water Act; and

2.  The issue of damages will be resolved at the trial scheduled for November 1999.