ALLIANCE FOR ENVIRONMENTAL RENEWAL, INC. and SAVE THE PINE BUSH INC., Plaintiffs–Appellants,

v.

PYRAMID CROSSGATES COMPANY, also known as Crossgates Mall Company LLP, Crossgates Mall General Company, LLP, Crossgates Mall Holdings, Inc., c/o the Pyramid Companies, and Crossgates Mall Enterprises Company, LLC, Defendants–Appellees.

No. 04–3000–CV.

United States Court of Appeals, Second Circuit.

Argued: Sept. 1, 2005.

Decided: Jan. 24, 2006.

Peter Henner, Clarksville, N.Y., for Plaintiffs–Appellants.

Robert L. Sweeney, Albany, N.Y. (Thomas A. Shepardson, Douglas R. Kemp, Shanley, Sweeney, Reilly & Allen, P.C., Albany, N.Y., on the brief), for Defendants–Appellees.

(Eliot Spitzer, N.Y. State Atty. General, Caitlin J. Halligan, Solicitor General, Daniel Smirlock, Deputy Solicitor General, Peter H. Lehner, John J. Sipos, Philip M. Bein, Asst. Attys. General, Office of N.Y. State Atty. General, Albany, N.Y., submitted a brief for amicus curiae State of New York, in support of Plaintiffs–Appellants.)

(Carter H. Strickland, Jr., Timothy Petrin, Law Student, Rutgers Environmental Law Clinic, Newark, N.J.; Nancy K. Stoner, Lawrence M. Levine, Natural Resources Defense Council, Inc., New York, N.Y., submitted a brief for amicus curiae National Resources Defense Council, Inc., in support of Plaintiffs–Appellants.)

Before: NEWMAN, CALABRESI, and STRAUB, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal of a dismissal of claims under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), concerns the proper course for a district court when confronted with a motion to dismiss both on the merits and for lack of subject matter jurisdiction in circumstances where subject matter jurisdiction is adequately pleaded but the underlying jurisdictional facts are in question. Plaintiffs–Appellants Alliance for Environmental Renewal, Inc., and Save the Pine Bush, Inc., appeal from the May 20, 2004, judgment of the District Court for the Northern District of New York (Gary L. Sharpe, District Judge) dismissing their CWA claims against Defendants–Appellees Pyramid Crossgates Company and several affiliated entities (collectively "Crossgates"). The District Court dismissed for lack of statutory standing, a ruling premised on the Court's view that salt is not a pollutant under the CWA. We hold that the District Court must first resolve the subject matter jurisdictional issue on which the Plaintiffs' Article III standing depends before awarding either side a judgment that is, in essence, a judgment on the merits. The Court may resolve the factual issues concerning

jurisdiction either on a summary judgment motion, if appropriate, or, if not, after an evidentiary hearing. Because the Article III jurisdictional facts have not yet been determined, we vacate and remand.

## Background

The Plaintiffs–Appellants are non-profit organizations dedicated to preserving the environment. Crossgates operates a shopping mall in Guilderland, New York. The complaint alleges that Crossgates discharges waste-water into the Krum Kill Creek pursuant to a permit issued by the New York State Department of Environmental Conservation ("NYSDEC"). Among other things, this permit limits the concentration of sodium chloride—salt—in Crossgates' waste-water discharges.

In October 2003, the Plaintiffs sent Crossgates a notice of intent to sue, citing violations of salt concentration limits in the previous winter. After NYSDEC and the United States Environmental Protection Agency ("EPA") declined to bring suit, the Plaintiffs filed a citizens' suit in the United States District Court for the Northern District of New York, pursuant to 33 U.S.C. § 1365.

Crossgates moved to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the Plaintiffs lacked standing, and pursuant to Rule 12(b)(6), asserting failure to state a claim on which relief can be granted. Crossgates challenged the Plaintiffs' standing both for lack of injury in fact sufficient to satisfy Article III standing and for lack of statutory standing under the CWA. In support of the Article III standing challenge, Crossgates contended that the

Plaintiffs' injury from the pollutants was not "fairly traceable," *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), to Crossgates because multiple sources for the salt run-off existed and the creek actually drained *away* from the Pine Bush Preserve. In support of the statutory standing challenges, Crossgates contended that the Plaintiffs lacked standing to sue under the CWA for a violation of a state-issued permit. Crossgates also argued, pursuant to Rule 12(b)(6), that the Plaintiffs' counts alleging violations of state statutes were not actionable under the CWA.

The Plaintiffs responded to the Article III standing challenge by submitting affidavits from officers of their organizations who stated that their members visit, observe, or recreate in and around the Krum Kill Creek itself, and that their interest in the preservation of the Pine Bush extended beyond the geographic bounds of the Pine Bush Preserve. These officers noted that one member lived near the creek and had children who had played in the creek, and many of their members had observed the creek as it flowed by a major highway and were offended by its appearance. In reply, Crossgates attacked the lack of specificity and the substantiality of the interests asserted in the affidavits.

To adjudicate the motion to dismiss the District Court first considered whether the Plaintiffs lacked statutory standing to sue under the citizens' suit provision of the CWA. In the Court's view, this question turned on whether salt is a pollutant within the meaning of section 502(6) the CWA, 33 U.S.C. § 1362(6).[1] The Court ruled that it is not. The Court further ruled

---

1. Section 502(6) of the CWA defines "pollutant" to mean

 dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials,

 radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water.

 33 U.S.C. § 1362(6).

that the Plaintiffs were claiming at most a violation of a state regulation, and, because the state regulation was broader in scope than the CWA, the District Court held, citing *Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.,* 12 F.3d 353, 358 (2d Cir.1993) ("*Kodak*"), that the Plaintiffs did not have statutory standing to sue under the CWA. The Court dismissed without prejudice to state court litigation the counts based on violations of state statutes and regulations.

On appeal, the Plaintiffs principally argue that the District Court erred in ruling that salt could not be regulated as a "pollutant" under the CWA. Crossgates supports the District Court's ruling on salt and also urges affirmance on the alternative ground that the Plaintiffs did not establish Article III standing.

## Discussion

■ An important component of the Article III jurisdictional limit of federal courts to deciding "cases" or "controversies" is standing. The Supreme Court has called Article III standing "perhaps the most important" of the case-or-controversy doctrines placing limits on federal judicial power. *See Allen,* 468 U.S. at 750, 104 S.Ct. 3315. More fundamental than judicially imposed, prudential limits on the exercise of federal jurisdiction is the "core component" of standing "derived directly from the Constitution." *Id.* at 751, 104 S.Ct. 3315. "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.*

■ Before 1998, federal courts, including the Second Circuit, *see Browning–Ferris Industries of South Jersey, Inc. v. Muszynski,* 899 F.2d 151, 154–59 (2d Cir. 1990), occasionally assumed the existence of jurisdiction and proceeded directly to the merits of a case in circumstances where the jurisdictional issue was close or complicated and the plaintiff's claim on the merits could be easily rejected. *See, e.g., SEC v. American Capital Investments, Inc.,* 98 F.3d 1133, 1139–42 (9th Cir.1996); *Smith v. Avino,* 91 F.3d 105, 108 (11th Cir.1996). However, the Supreme Court has substantially ended that practice, ruling that a district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Although *Steel Co.* makes clear that, with exceptions not relevant to the pending case,[2] the jurisdictional issue must be resolved before the merits issue, the decision creates an uncertainty as to the proper course in a case, like the pending one, presenting issues of both Article III and what the District Court viewed as statutory standing. The uncertainty arises from Justice Stevens's concurring opinion in *Steel Co.,* which pointed out that the Court had frequently decided statutory standing issues *before* deciding issues of Article III standing. *See id.* at 117, 118 S.Ct. 1003 (Stevens, J., with whom Souter, J., joins in relevant part, concurring in the judgment). Notably, Justice Stevens cited *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137

2. *See Steel Co.,* 523 U.S. at 98–99, 118 S.Ct. 1003 (discussing *Norton v. Mathews,* 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976) (jurisdictional issue not decided where merits decided in companion case), and *Secretary of*

*Navy v. Avrech,* 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974) (jurisdictional issue not decided where merits decided in intervening case)).

L.Ed.2d 281 (1997), written just one year before *Steel Co.* by Justice Scalia for a unanimous court.[3] In *Bennett,* Justice Scalia wrote, "The *first* question in the present case is whether the [Endangered Species Act]'s citizen-suit provision . . . negates the zone-of-interests test," *id.* at 164, 117 S.Ct. 1154 (emphasis added), a test he acknowledged derived from prudential limitations on standing, not Article III, *see id.* at 162–63, 117 S.Ct. 1154. Only after determining that the plaintiffs in *Bennett* were entitled to sue under the relevant statute did the Court proceed to consider the defendants' contention that the plaintiffs lacked Article III standing. *See id.* at 167–71, 117 S.Ct. 1154.

 Although the sequence of issues considered in *Bennett* appears to illustrate Justice Stevens's contention in *Steel Co.* that statutory standing issues may be resolved before Article III standing issues, the proposition might be more limited than first appears. Even though *Bennett* adjudicated and rejected the claim that statutory standing was lacking, its consideration of the Article III standing issue was made in a case where the plaintiffs' "complaint alleges facts sufficient to meet the requirements of Article III standing." *Id.* at 179, 117 S.Ct. 1154. Thus, *Bennett* may mean no more than that a court may adjudicate a statutory standing issue so long as Article III standing is adequately pleaded,[4] even though Article III standing might turn out to be absent upon subsequent fact-finding.

Even this is a somewhat surprising proposition. If on remand in *Bennett* the facts demonstrated that the plaintiffs lacked Article III standing, the Supreme Court would have opined on statutory standing in a case not within the Article III jurisdiction of a federal court. The rejection of so-called hypothetical jurisdiction the very next year in *Steel Co.* would seem to disapprove of, or at least seriously question, such an approach.

How *Steel Co.* is to be reconciled with *Bennett* remains in doubt. Justice Scalia's reply to the cases cited by Justice Stevens for the proposition that statutory standing may be decided before Article III standing was to deem them "irrelevant," *Steel Co.,* 523 U.S. at 92, 118 S.Ct. 1003, on the ground that the issue Justice Stevens wanted to decide first was not really statutory standing but, in Justice Scalia's view, the merits of the plaintiff's claim, *see id.* *Steel Co.* is clear enough that merits issues may not be decided first, but leaves us uncertain as to the circumstances under which statutory standing may be decided (and rejected) before Article III standing is established. *See id.* at 97 n. 2 (discussing why at least some statutory standing issues may be decided before Article III standing is established).

---

3. Other cases cited by Justice Stevens for the proposition that "given a choice between two jurisdictional questions—one statutory and the other constitutional—the Court has the power to answer the statutory question first," *Steel Co.,* 523 U.S. at 117, 118 S.Ct. 1003, are *United Food and Commercial Workers v. Brown Group, Inc.,* 517 U.S. 544, 548–50, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996), and *Cross–Sound Ferry Services, Inc. v. ICC,* 934 F.2d 327, 341 (D.C.Cir.1991) (Thomas, J., concurring in part). *See Steel Co.,* 523 U.S. at 117, 118 S.Ct. 1003.

4. Adequate pleading of a non-frivolous substantive issue—whereby the plaintiff wins under one construction of a federal statute and loses under another—is deemed sufficient to invoke federal question jurisdiction, *see Bell v. Hood,* 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946). However, Article III standing needs to be established, not merely pleaded, in order to give a federal court the authority to exercise federal question jurisdiction.

■ In some cases, an issue of statutory standing may be closely related to, if not inextricably entwined with, an issue on the merits. *See, e.g., Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 120–30 (2d Cir.2003) (discussing causation requirement of RICO). Indeed, that appears to be what the District Court thought was occurring in this case. The Court viewed the question of whether salt was a pollutant within the scope of the CWA as a question of the Plaintiffs' statutory standing to sue. That approach was not dissimilar to our observation in *Kodak* that the parties' standing arguments were based upon differing constructions of the governing statute, and "therefore, [plaintiffs'] standing to bring this action turns on the merits of the action itself."[5] *Kodak,* 12 F.3d at 357. Whatever *Steel Co.* might permit with respect to deciding a statutory standing issue before an Article III standing issue, it must mean that a statutory standing issue may not be decided first in those cases where the statutory standing issue is essentially the same as a merits issue.

The message of *Steel Co.* that Article III standing must be decided before the merits (and hence before statutory standing issues bound up with the merits) does not inevitably mean that a district court must make a definitive ruling on Article III

standing before giving *any* consideration to the merits. *Steel Co.* is not concerned with the ordering of a district court's receipt of· evidence or any other aspects of procedure; it seeks to guard only against a definitive ruling on the merits by a court that lacks jurisdiction because of the absence of an Article III requirement, such as Article III standing.

■ In the pending case, however, the District Court made no resolution of the dispute concerning the Plaintiffs' Article III standing before ruling that salt was not a pollutant within the meaning of the CWA. If the Plaintiffs lack Article III standing, the District Court (and this Court if we were to accept the Defendants' argument that we should affirm on the merits) would have construed the statute in a case beyond the jurisdiction of a federal court. The District Court was therefore premature in making its statutory-standing/merits ruling without ascertaining that the plaintiffs had established their Article III standing. Adherence to *Steel Co.* requires a remand for determination of Article III standing.

■ As in any case requiring determination of Article III standing, once the Defendants' motion to dismiss for lack of

---

**5.** The first issue considered in *Kodak* was whether a suit under the citizen suit provision of the CWA could be maintained to complain about pollutants not listed in a state permit. *Kodak,* 12 F.3d at 357–59. In discussing that issue, we stated that the plaintiffs' *"standing to bring this action turns on the merits of the action itself," Id.* at 357 (emphasis added), and ruled that the suit could not be maintained to complain about pollutants not listed in the state permit. This would appear to have been a ruling solely on the merits, not involving statutory standing at all. The Court did not suggest that some other plaintiffs might have had standing under the statute to complain about pollutants not listed in the

permit; it ruled that no complaint about unlisted pollutants was valid under federal law. The second issue discussed in *Kodak,* whether citizens, in addition to the EPA and a state, could sue for violation of a state permit was unquestionably an issue of statutory standing.

Whether or not the first issue in *Kodak* (or the issue in the pending case) really involves an issue of statutory standing, what is clear is that, as to such issues in both cases, any such possible issue of statutory standing turns on the merits of the claim and, for reasons explained in the text, cannot be the subject of a final adjudication prior to the establishment of Article III standing.

jurisdiction under Fed.R.Civ.P. 12(b)(1)[6] put the Plaintiffs' Article III standing in issue,[7] the District Court has leeway as to the procedure it wishes to follow. *See Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court."). After limited discovery on the jurisdictional issue, *see Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir.1990), the matter might be appropriate for resolution on motion supported by affidavits,[8] *see Exchange National Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.1976), or, if a genuine dispute of material fact exists, the Court may conduct a hearing limited to Article III standing, *see Lawrence v. Dunbar*, 919 F.2d 1525, 1529–30 (11th Cir. 1990); *cf. Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (outlining similar procedures for establishing personal jurisdiction under Rule 12(b)(2)). Or, where the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of the evidence. *See Land v. Dollar*, 330 U.S. 731, 739, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) ("[T]he District Court has jurisdiction to determine its jurisdiction by proceeding to a decision on the merits."); *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 n. 3 (1st Cir.2001). If, however, the overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial, *see Morrison v. Amway Corp.*, 323 F.3d 920, 930 (11th Cir.2003); *cf. Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 677 (1st Cir.1992) (making same point as to personal jurisdiction). The Court may also deem it appropriate to make a preliminary finding on jurisdictional facts, subject to revision later in the proceedings or at trial. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537–38, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); *see also Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 121 n. 1 (2d

---

**6.** Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), *see Thompson v. County of Franklin*, 15 F.3d 245, 247 (2d Cir.1994); *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 & n. 2 (2d Cir.1993), the proper procedural route is a motion under Rule 12(b)(1). *See Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362 (1st Cir.2001). The distinction is important because a typical dismissal under Rule 12(b)(6), *i.e.*, for failure to state a claim, is an adjudication on the merits with preclusive effect, *see Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir.1996). Presenting and considering a challenge to lack of Article III standing under Rule 12(b)(1) avoids the needs to fashion a modified approach to a Rule 12(b)(6) motion that concerns standing. *See Rent Stabilization Ass'n*, 5 F.3d at 594.

Although lack of Article III standing and subject matter jurisdiction are distinct concepts, *see id.* at 594 n. 2, Article III standing remains, as we have noted, a limitation on the authority of a federal court to exercise jurisdiction. *See Allen*, 468 U.S. at 750, 104 S.Ct. 3315.

**7.** The Defendants' motion made a factual challenge to the Plaintiffs' Article III standing, not merely a facial challenge that accepts the jurisdictional facts pleaded and challenges only their sufficiency. *Cf. Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 887 n. 15 (2d Cir.1996).

**8.** The presentation of affidavits on a motion under Rule 12(b)(1), however, does not convert the motion into a motion for summary judgment under Rule 56. *See Kamen v. AT & T Co.*, 791 F.2d 1006, 1010–11 (2d Cir.1986).

Cir.1998); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1330 (2d Cir.1972).

### Conclusion

Accordingly, the judgment of the District Court is vacated, and the case is remanded for further proceedings consistent with this opinion.