**BEARTOOTH ALLIANCE, a non-profit corporation, et al., Plaintiffs,**

v.

**CROWN BUTTE MINES, a Montana corporation, et al., Defendants.**

No. CV 93–154–BLG–JDS.

United States District Court, D. Montana, Billings Division.

Oct. 13, 1995.

Douglas L. Honnold, Sierra Club Legal Defense Fund, Bozeman, MT, Gordon Atkinson, Cooley, Godward, Castro, Huddleson & Tatum, Palo Alto, CA, for Beartooth Alliance, Greater Yellowstone Coalition, Northern Plains Resource Council, Northwest Wyoming Resource Council, Sierra Club, Gallatin Wildlife Association, Wyoming Wildlife Federation, Montana Wildlife Federation, Wyoming Outdoor Council.

Dana L. Christensen, Dale R. Cockrell, Murphy, Robinson, Heckathorn & Phillips, PC, Kalispell, MT, Alan L. Joscelyn, Gough, Shanahan, Johnson & Waterman, Helena, MT, for Crown Butte Mines, Inc.

Dana L. Christensen, Dale R. Cockrell, Murphy, Robinson, Heckathorn & Phillips, Kalispell, MT, for Crown Butte Resources, Ltd.

Dana L. Christensen, Dale R. Cockrell, Murphy, Robinson, Heckathorn & Phillips, PC, Kalispell, MT, Alan L. Joscelyn, Gough, Shanahan, Johnson & Waterman, Helena, MT, Carolyn S. Ostby, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, MT, for Noranda Minerals Corp.

Carolyn S. Ostby, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, MT, for Noranda Exploration, Inc.

Dana L. Christensen, Murphy, Robinson, Heckathorn & Phillips, PC, Kalispell, MT, Carolyn S. Ostby, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, MT, for Noranda, Inc.

## MEMORANDUM AND ORDER

SHANSTROM, District Judge.

Pending before this Court are two motions for partial summary judgment by plaintiffs: one regarding standing as to nine environmental groups in this suit, and the other regarding the liability of defendants Crown Butte Mines (CBM), Crown Butte Resources (CBR), and Noranda Minerals Corporation (NMC), under the Clean Water Act (CWA). Both motions are granted.

Also pending is a motion by defendants CBM and CBR to strike supplemental material submitted with plaintiffs' motion for summary judgment, as well as two motions for summary judgment: one by NMC and Noranda, Inc. (NI) and one by CBM and CBR. Defendants' motion to strike is deemed moot. Both motions for summary judgment by defendants are denied.

### BACKGROUND FACTS

Plaintiffs, several environmental groups, filed a two-count complaint seeking declaratory and injunctive relief and the imposition of civil penalties. The complaint alleges that defendants are responsible for unpermitted discharges of pollutants into Daisy, Miller,

and Fisher Creeks from the New World Mine District (New World) near Cooke City, Montana, in violation of the CWA. Defendants contend that they are not in violation of the CWA.

The CWA, with certain limited, enumerated exceptions, prohibits the discharging of pollutants into navigable waters of the United States. 33 U.S.C. § 1311(a) (1986). Under the CWA, a discharge must be made in compliance with a National Pollutant Discharge Elimination System (NPDES) permit issued to the discharging party. 33 U.S.C. § 1342 (1986 & Supp.1995). An NPDES permit is issued by the Administrator of the Environmental Protection Agency (EPA) or by a state agency under an EPA-approved State Pollutant Discharge Elimination System Permit program. 33 U.S.C. § 1342(b). Montana has an approved NPDES permit program.

Here, plaintiffs allege defendants are in violation of 33 U.S.C. § 1311(a) because none of the latter possess a Montana Pollutant Discharge Elimination System (MPDES) permit covering discharges of pollutants from New World. Accordingly, this action was commenced as a "citizen suit" under 33 U.S.C. § 1365(a)(1) seeking relief for past and ongoing violations.

**1. *Plaintiffs' Motion for Partial Summary Judgment as to standing***

■ In pursuing a suit under the CWA, plaintiffs must demonstrate that they have standing. *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 984 (9th Cir.1994). Standing has three elements: 1) injury in fact, or an invasion of a legally protected interest which is concrete and particularized, and actual or imminent; 2) a causal connection between the injury suffered and the conduct that is the basis for the suit; and 3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992).

Defendants concede, and this Court agrees, that plaintiffs Greater Yellowstone Coalition (Yellowstone), Beartooth Alliance (Beartooth), and Northern Plains Resource Council (Northern Plains) have standing to maintain the action. Defs.' Br. in Resp. to Mot. for Partial Summ.J. at p. 2. At issue is whether the remaining six defendants— Northwest Wyoming Resource Council, Sierra Club, Gallatin Wildlife Association, Wyoming Wildlife Federation, Montana Wildlife Federation and Wyoming Outdoor Council— have met the requirements for establishing standing.

■ It is undisputed that three plaintiffs have standing. All plaintiffs are asserting the same grounds for relief and have been making only one submission to represent their collective arguments. Since no dispute exists as to the standing of three plaintiffs, this Court need not consider the standing issue as to the other six plaintiff organizations. *See Bowsher v. Synar*, 478 U.S. 714, 721, 106 S.Ct. 3181, 3185, 92 L.Ed.2d 583 (1986) (concluding that when one party has standing, court need not address standing of other parties); *Secretary of Interior v. Cal.*, 464 U.S. 312, 319 n. 3, 104 S.Ct. 656, 660 n. 3, 78 L.Ed.2d 496 (1984) (stating no need existed to address standing as to parties who had identical positions since standing of one party was already established); *Board of Natural Resources v. Brown*, 992 F.2d 937, 942 (9th Cir.1992) (noting that if any one of a group of plaintiffs had standing, court may reach merits of case without considering whether the others have standing).

The Court notes, however, that up to this point, one submission by plaintiffs to the Court has represented the interests of all plaintiffs. The Court sees no reason why this ruling should affect that practice; therefore, absent leave of the Court, only one submission will continue to be expected from plaintiffs.

**2. *Plaintiffs' Motion for Partial Summary Judgment declaring defendants' liability under the CWA***

Pursuant to a partial summary judgment motion, plaintiffs ask the Court to declare the liability of defendants CBM, CBR, and NMC under the CWA. Plaintiffs seek a determination that defendants are liable under the CWA because they are discharging pollutants into navigable waters without a permit from Glengarry Adit, McLaren Pit and Como Pit. *See* Pls.' Br. in Supp. of Mot. at pp. 2–3.

Defendants' response is threefold. First, defendants assert that the CWA does not prohibit the discharge of pollutants into navigable waters without an NPDES permit, but provides that any discharge must be in compliance with 33 U.S.C. §§ 1311(a) and 1342, which only require that they apply for a permit before discharging pollutants. Second, defendants argue that all water flowing from New World is storm water and can be permitted under the Storm Water Permit Program. Third, defendants assert that no legal difference exists between the two permits plaintiffs claim must be obtained.

The CWA makes it unlawful for any person or entity to "discharge any pollutant" without a permit. *See* 33 U.S.C. §§ 1311(a) and 1342(a); *Committee to Save Mokelumne River v. East Bay Util.*, 13 F.3d 305, 309 (9th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 198, 130 L.Ed.2d 130 (1994). "Discharge of any pollutant" is defined as "any addition of any pollutant to navigable waters from a point source." 33 U.S.C. § 1362(12)(A) (1986). The EPA Administrator permits some discharges of pollutants under the NPDES.[1] *See* 33 U.S.C. § 1342(a).

■ To prevail on this motion, plaintiffs must prove that defendants are responsible for an unpermitted discharge in violation of the CWA. To establish a violation of the CWA's NPDES requirements, plaintiffs must demonstrate that defendants (1) discharged or "added" (2) a pollutant (3) to navigable waters (4) from a point source (5) without a permit. *See Mokelumne River*, 13 F.3d at 308; *National Wildlife Fed'n v. Gorsuch*, 693 F.2d 156, 165 (D.C.Cir.1982). The Court will address each of the five elements separately.

(1) **Discharged or Added:** The CWA defines discharge of a pollutant or pollutants as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). It is admitted by CB[2] and NMC that water flows from the Glengarry Adit to Fisher Creek. CB Answer at ¶ 23; NMC Answer at ¶ 23. Additionally, CB and NMC

agree that water flows from Como Pit into Fisher, Daisy, and Miller Creeks. CB Answer at ¶ 26; NMC Answer at ¶ 26. The water flowing from Glengarry Adit and other areas at New World contains elevated levels of substances, such as aluminum, arsenic, cadmium, copper, iron, mercury, selenium, and zinc. CB Answer at ¶ 25; NMC Answer at ¶ 25.

(2) **A Pollutant:** A pollutant under the CWA includes chemical wastes, biological materials, and industrial and municipal waste. 33 U.S.C. § 1362(6). Plaintiffs argue that exploration and development at New World have caused a dramatic increase in the acid mine drainage flowing from the site. *See* Pls.' Br. in Supp. of Mot. at p. 3. Defendants, on the other hand, contend that acid mine drainage existed at the site prior to any human disturbances, and that, therefore, the acid mine drainage is not a pollutant under the CWA. *See* Defs.' Br. in Resp. to Mot. at p. 4.

"Pollutant" is broadly defined under the CWA. 33 U.S.C. § 1362(6). Acid mine drainage is composed, in part, of copper and zinc which are considered pollutants subject to effluent limitations established by the EPA for active mines. 40 CFR § 440.100. The Ninth Circuit has already found that the discharge of acid mine drainage is sufficient to satisfy the "pollutant" prong of the test. *See Mokelumne River*, 13 F.3d at 309. *See also United States v. Iron Mountain Mines*, 881 F.Supp. 1432, 1435 (E.D.CA.1995) (noting in CERCLA context that acid mine drainage is "a pollutant harmful to fish").

■ The Court is unpersuaded by defendants' argument that the acid mine drainage at New World is a result of naturally occurring conditions which predate any historic mining activities. *See* Defs.' Br. in Resp. to Mot. at p. 4. It is undisputed that water flowing from Glengarry Adit "contains elevated levels of aluminum, arsenic, cadmium, copper, iron, lead, manganese, mercury, sele-

---

**1.** The MPDES permitting program, which is administered by the Montana Department of Health and Environmental Sciences, is essentially the equivalent of the federal permit system (NPDES) administered by the EPA. Compliance with the MPDES program, therefore, constitutes compliance with the CWA.

**2.** For the purpose of this motion, "CB" refers to CBM and CBR collectively.

nium, silver, and zinc." CB Answer at ¶ 25; NMC Answer at ¶ 25. Defendants have conceded in their 1993 Annual Report, dated May 1994, that historic mines are the reason that several miles of both Daisy and Fisher Creeks are essentially biologically dead. *See* Pls.' Ex. 18 in Supp. of Mot. at p. 6. Defendants have noted that "much of the water degradation at New World is clearly associated with abandoned mine sites." *See* Pls.' Ex. 6 in Supp. of Mot. (Publication by New World entitled "Water Quality at New World"). In fact, as recently as June 21, 1995, the president of CBM wrote in a letter to a Montana senator that the company is in the process of reclaiming a number of old mine sites that "have been leaching acid mine waste into the surrounding streams for many years." *See* Pls.' Ex. 46 in Supp. of Mot. at p. 3. He also wrote that because of their efforts, "much of the *man-made* acid mine leaching which is presently occurring in this area will be alleviated." *Id.* (emphasis added)

In addition to defendants' own admissions, the Ninth Circuit has held that any reliance on historical pollution to evade current liability misapprehends the focus of the CWA. *Mokelumne River*, 13 F.3d at 309. The court in *Mokelumne River* explained that the CWA does not impose liability only where a net increase in the level of pollution from a point source discharge is present. *Id.* Rather, the CWA categorically prohibits any discharge of a pollutant from a point source without a permit. *Id.;* 33 U.S.C. §§ 1311(a) and 1342(a). Arguments comparing the historical levels of pollution to current levels is not a material fact that would preclude this Court from granting a summary judgment motion as to defendants' liability under the CWA. *Id.*

This Court finds that acid mine drainage, which contains high concentrations of aluminum, cadmium, copper, zinc, iron and sulfuric acid, is a pollutant within the CWA.

(3) **To Navigable Waters:** "Navigable waters" are defined as the waters of the United States. 33 U.S.C. § 1362(7). The term has been interpreted to include virtually any surface waters, navigable or not. *United States v. Riverside Bayview Homes*, 474 U.S. 121, 123–24, 106 S.Ct. 455, 457–58, 88 L.Ed.2d 419 (1985). CB and NMC concede, and this Court agrees, that Fisher, Daisy, and Miller Creeks are "navigable waters" within the meaning of the CWA. CB Answer at ¶ 41; NMC Answer at ¶ 41.

■ **From a Point Source:** The CWA prohibits all discharges of pollutants from identifiable "point sources" to waters of the United States absent an NPDES permit. 33 U.S.C. §§ 1311(a) and 1342. A "point source" is:

any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, [or] discrete fissure . . . from which pollutants are or may be discharged.

33 U.S.C. § 1362(14) (1986 & Supp.1995). As noted below, the courts and the EPA interpret "point source" broadly.

■ This Court is persuaded by the reasoning of the Tenth Circuit in *United States v. Earth Sciences, Inc.*, 599 F.2d 368, 373 (10th Cir.1979), adopted by the Ninth Circuit in *Trustees for Alaska v. EPA*, 749 F.2d 549, 558 (9th Cir.1984). The *Earth Sciences* court noted that "point sources" must be interpreted broadly to effectuate the remedial purposes of the CWA. *Earth Sciences*, 599 F.2d at 373. The non-point source designation is limited to uncollected runoff water which is difficult to ascribe to a single polluter. *Trustees for Alaska*, 749 F.2d at 558.

■ Even the EPA has stated its intent "to embrace the broadest possible definition of point source consistent with the legislative intent of the CWA." *See* 55 Fed.Reg. 47990, 47997 (Nov. 16, 1990) (preamble to Storm Water Regulations under NPDES). Although they are not authoritative, this Court is also persuaded by statements from EPA Region VIII regarding the definition of "point source." In a letter from the Director of the Water Management Division, the EPA makes clear that "any seeps coming from identifiable sources of pollution (i.e., mine workings, land application sites, ponds, *pits*, etc.,) would need to be regulated by discharge permits." *See* Pls.' Ex. 28 in Supp. of Mot. at p. 2 (Letter edited by Director of the Water Management Division of EPA, Region VIII (emphasis added)). Further, the EPA

has specifically stated, "It is EPA's position that mine adits such as the Glengarry Adit are clearly point sources as defined under ... the CWA ... and that the discharges from the Glengarry Adit are required ... to have an NPDES permit." *See* Pls.' Ex. 23 in Supp. of Mot. at ¶ 5 (Declaration by Director of the Water Management Division of EPA, Region VIII). This Court finds that Glengarry Adit, McLaren Pit, and Como Pit are "discernable, confined and discrete" conveyances constituting point sources.

■■ (5) **Without a Permit:** In 1992, Crown Butte applied to the State of Montana for a general storm water permit, but the state informed defendants that an individual MPDES storm water permit would be needed. CB Answer at ¶ 36; NMC Answer at ¶ 36. To date, no permit has been issued to defendants. CB Answer at ¶ 43; NMC Answer at ¶ 43. Indeed, it is undisputed that although CB has applied for at least one type of permit, they have not yet received one.

The CWA categorically prohibits any discharges of pollutants from identifiable "point sources" to waters of the United States absent an NPDES permit. *Mokelumne River,* 13 F.3d at 309; 33 U.S.C. § 1311(a), 1342(a). The permit system is the only means by which a discharge of pollutants may escape the total prohibition of discharge from point sources established by the CWA. *See Natural Resources Defense Council, Inc. v. Costle,* 568 F.2d 1369, 1374 (D.C.Cir.1977). To be in compliance with the CWA, it is necessary to not only apply for, but also to have a permit. *Mokelumne River,* 13 F.3d at 309; 33 U.S.C. § 1311(a), 1342(a); *see also United States v. Tom–Kat Dev., Inc.,* 614 F.Supp. 613, 614 (D.Alaska 1985) (holding good faith efforts to acquire requisite permits under 33 U.S.C. § 1342 does not absolve defendant of potential liability for CWA violations).

This Court finds defendants liable for violations of the CWA for discharges occurring at New World. Defendants discharged or added a pollutant (acid mine drainage) into navigable waters (Fisher, Daisy, and Miller Creeks) from point sources (Como Pit, McLaren Pit, and Glengarry Adit) without a permit. Accordingly, plaintiffs' motion for summary judgment declaring defendants' liability is granted.

### 3. *Motion to Strike Supplemental Material Submitted with Plaintiffs' Motion for Partial Summary Judgment*

Defendants CBM and CBR move this Court to strike certain supplemental documents submitted with plaintiffs' motion for summary judgment. In deciding the motion for summary judgment at issue, the Court did not rely on any of the supplemental documents cited by defendants in this motion. Because of this fact, the Court will not decide this motion on its merits, but rather will deem it moot.

### 4. *Motion for Summary Judgment by Defendants NMC and NI*

Defendants NMC and NI move for summary judgment urging the Court to dismiss both corporate entities for the following four reasons: 1) this Court lacks subject matter jurisdiction because violations, if any, are wholly past violations of the CWA; 2) even if NI or NMC were former operators of the site, neither is liable for past violations of the CWA; 3) this action is moot as to these defendants because any alleged violation of the CWA is not reasonably expected to recur; and 4) performance of services for a fee does not subject either of these defendants to liability under the CWA. Defendants further argue that to prevail, plaintiffs must prove that these defendants were *and* are owners or operators under the CWA and that NI and NMC have ongoing violations.

Plaintiffs respond that these defendants were operators under the CWA when the suit was filed and that the violations were ongoing. They contend that NMC is a sham corporation that is fully funded by NI to oversee its mining developments in the United States and that NI has parent liability for NMC's violations.

This Court previously dismissed former defendant Noranda Exploration, Inc. (NEX) by summary judgment. *See* May 24, 1995 Mem. and Order. NEX began activities at New World in 1987, and with the exception of very limited activities performed off the site, the work was finished in 1992, prior to the filing of this suit in September 1993. *Id.* at

p. 4–5. It is undisputed that NEX was not an owner, and this Court found that the activities performed by NEX did not qualify NEX as an operator. Although NMC shares the same placement in the corporate structure as NEX, this Court finds significant differences between NEX and the defendants now moving for summary judgment.

■ Under the CWA, any citizen may commence a civil action against any person who is allegedly in violation of the CWA. 33 U.S.C. § 1365(a) (1986 & Supp.1995). Pursuant to this code section, citizens may seek penalties only in suits brought to enjoin or otherwise abate ongoing violations. *Gwaltney of Smithfield v. Chesapeake Bay Found.,* 484 U.S. 49, 59, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987). For this Court to have jurisdiction over NMC and NI, there must be a good faith allegation of violations that were occurring at the time suit was filed. *Id.,* 484 U.S. at 64, 108 S.Ct. at 385. A good faith allegation of ongoing violations was made by plaintiffs in the complaint; therefore, this Court has jurisdiction.

Neither NI nor NMC currently owns or has ever owned property at the New World site. *See* Defs.' Statement of Uncontroverted Facts in Supp. of Mot. at ¶ 4 and ¶ 11. Therefore, neither defendant qualifies as an "owner" at the time the suit was filed or thereafter. Thus, this Court must now consider the status of defendants as "operators" during the relevant times. Defendants contend that summary judgment declaring they are not operators is proper.

■ The CWA defines "owner or operator" as "any person owning or operating" a facility. 33 U.S.C. § 1321(a)(6) (1986). Although case law specifically defining "operator" under the CWA is sparse at best, the view often adopted is that expressed in *Apex Oil Co. v. United States,* 530 F.2d 1291, 1293 (8th Cir.1976), *cert. denied,* 429 U.S. 827, 97 S.Ct. 84, 50 L.Ed.2d 90 (1976). An entity is an operator of a facility where it has the power or capacity to (i) make timely discovery of discharges, (ii) direct the activities of persons who control the mechanisms causing the pollution, and (iii) prevent and abate damage. *Id.* at 1293 (quoting *United States v. Mobil Oil Corp.,* 464 F.2d 1124, 1127 (5th Cir.1972)); *State of Idaho v. Bunker Hill,* 635 F.Supp. 665, 672 (D.Idaho 1986). The above test encourages this Court to look at the amount of involvement and control at New World to determine whether either defendant can be dismissed because of its lack of status as a operator.

■ Defendants argue that both NMC and NI ceased all activities at New World before the complaint was filed in 1993. *See* Defs.' Br. in Supp. of Mot. at p. 5. However, evidence exists to the contrary.

For instance, the 1994 CBR Annual Report states that "[u]ntil June 30, 1994, employees of Noranda subsidiaries carried out or supervised substantially all mineral property acquisition, exploration, development, engineering, and permitting works at, or in respect of, the New World Property." *See* Pls.' Ex. 1 in Resp. to Mot. (1994 CBR Annual Report). In a deposition, Michael Proctor, Vice-President of Finance at Crown Butte Resources, verified that the statement in the annual report was accurate at the time it was written, which was sometime in early 1994, and explained that the Noranda subsidiary employees subsequently became CBM employees. *See* Pls.' Ex. 2 in Resp. to Mot. at pp. 73–74 (May 16, 1995 Dep. of Proctor).

Additionally, Dave Rovig, past President of Crown Butte, stated that NMC assumed the "day-to-day functional operations of managing the project" once NEX ceased to be actively involved. *See* Pls.' Ex. 3 in Resp. to Mot. at p. 44 (May 25, 1995 Dep. of Rovig). He explained that CBM was created as a Montana corporation to own the New World property, and that CBR was created primarily as a financing vehicle. *See* Pls.' Ex. 3 at pp. 9–10 (May 25, 1995 Dep. of Rovig). Furthermore, contrary to claims by defendants that CBM directed and controlled all activities performed by either NMC or NI, evidence suggests that the former may not have been ultimately responsible for supervising the operations management of employees at New World. *See* Pls.' Ex. 2 in Resp. to Mot. at pp. 54–55 (May 16, 1995 Dep. of Proctor).

Defendants also contend that even if they were operators, they cannot be liable for any past violations. This Court recognizes that a

citizen suit cannot be based upon wholly past violations of the CWA. *Gwaltney,* 484 U.S. at 60, 108 S.Ct. at 383. However, suits may be maintained for violations taking place at the time a citizen suit was filed. *Gwaltney,* 484 U.S. at 64, 108 S.Ct. at 385; *Sierra Club v. Union Oil Co.,* 853 F.2d 667, 671 (9th Cir.1988) (focusing on the status of violations at time lawsuit is filed). Evidence of post-complaint violations is dispositive on the issue of ongoing violations. *Carr v. Alta Verde Indus., Inc.,* 931 F.2d 1055, 1065 at n. 12 (5th Cir.1991) (stating that "proof of an actual violation subsequent to the complaint is conclusive" as to the issue of ongoing violations).

The allegations of injury based upon allegations in the instant complaint and supporting affidavits are sufficient to invoke the jurisdiction of this Court. *Gwaltney,* 484 U.S. at 65, 108 S.Ct. at 385. Contrary to defendants' contentions, violations were not wholly past violations. Because this Court finds evidence that violations were occurring at New World after the complaint was filed, this Court has subject matter jurisdiction.

■ Defendants also argue that this case is moot. Defendants have a heavy burden in seeking to have the claims against them dismissed as moot. *Gwaltney,* 484 U.S. at 66, 108 S.Ct. at 386. Because civil penalties remain an issue, the case is not moot. *See Chesapeake Bay Found. v. Gwaltney,* 890 F.2d 690, 696 (4th Cir.1989) (stating that penalty factor keeps case alive even though defendant is no longer in violation).

■ In addition, while this Court agrees with defendants that simply the performance of services for a fee does not subject a defendant to liability under the CWA, the Court finds that as to these defendants, much more is involved then simply the performance of services for a fee. A review of the submitted materials, including the exhibits and depositions, indicates that NMC exercised some amount of control over the site at periods after the suit was filed. This Court will not grant summary judgment for NMC under these facts.

Finally, the corporate structure involved in this case leaves NI as the grandparent corporation of NMC. Evidence has been presented to indicate that NMC may be almost totally financially dependent upon funding by its parent companies. Consequently, this Court is unwilling to dismiss NI from this suit.

### 5. Motion for Summary Judgment by Defendants CBM, CBR, NMC, and NI [3]

Pursuant to a summary judgment motion, defendants CBM, CBR, NMC, and NI are moving this Court for an order stating that they are not in violation of the CWA. Because this Court discussed and granted plaintiffs' motion for summary judgment declaring defendants in violation of the CWA, supra, this motion by defendants requires no further discussion.

Pursuant to the foregoing,

**IT IS ORDERED:**

1. Plaintiffs' motion for partial summary judgment as to standing is granted.

2. Plaintiffs' motion for summary judgment declaring defendants in violation of the CWA is granted.

3. Defendants CBM and CBR's motion to strike supplemental material is deemed moot.

4. Defendants NMC and NI's motion for summary judgment is denied.

5. Defendants CBM, CBR, NMC, and NI's motion for summary judgment declaring that they are not in violation of the CWA is denied.

The Clerk of Court is directed to forthwith notify the parties of the making of this order.

---

**3.** Defendants have requested that if NMC and NI's motion for summary judgment is not granted by this Court, NMC and NI be joined in this motion. *See* Defendants' Brief in Support of Motion at p. 2, n. 1. Pursuant to that request, NMC and NI are being considered as movants in this motion.